**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FERNANDO VILLAFAÑA-RIVERA, NARSISA RIVERA-VALENTÍN, <br><br> Plaintiffs <br><br> v. <br><br> PEDRO TOLEDO-DÁVILA, ET AL., <br><br> Defendants. | CIV. NO. 10-2079 (PG) |

**OPINION AND ORDER**

Plaintiffs Fernando Iván Villafaña-Rivera (hereinafter "Villafaña" or "Plaintiff") and his mother Narsisa Rivera-Valentín (hereinafter "Rivera-Valentín") brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of their civil rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[1] The violations allegedly stem from the use of excessive force by officers of the Puerto Rico Police Department (PRPD) on the evening of November 4, 2008, while Villafaña was being arrested. Co-defendants and PRPD officers Ruben Echevarría-Torres, Felix Campos-Santiago, Julio A. Quintana-Serrano, and former PRPD Superintendent Pedro Toledo-Dávila (hereinafter collectively referred to as "Defendants") have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking the dismissal of all of Plaintiffs' claims. Docket No. 11. Plaintiffs have filed a timely opposition. Docket No. 15. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**

**I. BACKGROUND**

**A. Procedural Background**

---

[1] Plaintiffs also advance claims under Article II, §§ 7, 9, 10, 11 and 19 of the Puerto Rico Constitucion, as well as article 1802 of the Puerto Rico Civil Code, thus invoking the Court's supplemental jurisdiction. 28 U.S.C. § 1367.

On November 3, 2010, Villafaña filed the above-captioned claim against Defendants pursuant to Section 1983. Docket No. 1. Villafaña seeks redress for the injuries allegedly suffered by him at the hands of PRPD officers Ruben Echevarría-Torres, Felix Campos-Santiago, Julio A. Quintana-Serrano, and John Does 1 through 7 (collectively referred to as "The Officers") which resulted from their use of excessive force and/or their failure to intervene to prevent the use of excessive force, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Villafaña also seeks redress against the former Superintendent of the PRPD, Pedro Toledo-Dávila, and Supervisors John Does 7 through 14 (collectively referred to as "The Supervisors") due to their failure to train, instruct, supervise, control and discipline officers under their command and establish policies to review the use of deadly force by PRPD officers. Lastly, Villafaña alleges that Defendants' acts violated his rights under Article II, Sections 7, 9, 10, 11 and 19 of the Constitution of the Commonwealth of Puerto Rico, and constituted negligence under Article 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, § 5141.[2]

Defendants filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Docket No. 11, and Plaintiff filed an opposition thereto, Docket No. 15.

**B. Factual Background**

The Court draws the following facts from Plaintiff's complaint and takes them as true for the purpose of resolving Defendants' Motion to Dismiss.

On November 4, 2008, Villafaña claims that he was erroneously arrested in the backyard of his residence by PRPD officers of the Special Operations Unit. At around 9:00 pm, while at his home, he heard noises in the street in front of his residence and decided to get closer to see what

---

[2] All defendants are sued in their individual capacity.

was going on. Compl. ¶ 8. Villafaña stood next to a yellow truck that was parked on his neighbor's yard and saw motorcycles, four-tracks and people running on the street in front of his residence. He then saw a group of men dressed in black walking towards him and, under the impression they were thugs, decided to hide underneath the yellow truck. These men, who turned out to be The Officers and present defendants from the Special Operations Unit, proceeded to pull him out from underneath the yellow truck.

One of The Officers hit him with his nightstick on his left leg and head. Another officer punched, kicked and choked him, and while on the ground, other officers assaulted and battered him using nightsticks, boots, and their hands. Id. Villafaña states that as the beating did not stop, he tried to explain to the officers that he had not done anything wrong and that he had just been washing clothes at his residence. The Officers then proceeded to beat him again with their nightsticks at least five to eight times, leaving marks on his legs and other parts of his body. At some point the beating stopped and he was taken to a police station where The Officers filed false accusations against him. As a result of the thrashing, Villafaña claims he suffered serious trauma requiring medical attention, and in addition, economic losses stemming from related medical expenses and loss of earnings due to missing work. Id. at ¶ 9.

Furthermore, Villafaña states that The Officers joined to conspire in the cover up and concealment of the events that occurred that night. Id. The officers failed to report, on their own volition, the abusive conduct of their peers, and conspired to lie about the events described in the complaint. As a result, he claims no charges have been filed against any of the officers due to the incident. Id. at ¶ 10.

As to his claims against The Supervisors, Villafaña avers that within the Puerto Rico Police Department (PRPD) there exist policies or customs, practices and usages that are so pervasive that they constitute the policy of the PRPD. Namely, these practices include: (1) assaulting

and battering citizens without regard for the need to use force or the legality of its use; (2) a code of silence consisting of acting individually and conspiring amongst the officers to prevent disclosing the truth by lying or failing to report transgressions; (3) failing to adequately and properly receive and investigate citizen complaints, as well as discipline, re-train, or otherwise sanction and/or remedy the transgressions of the officers in question (a failure that plaintiff alleges has been ratified by The Supervisors); (4) failing to adopt and maintain an effective early warning system designed to identify repeatedly deviant officers and then failing to address and correct deviance; (5) failing to adopt independent investigations and review of citizen complaints, relying instead on police officers employed by the same Commonwealth, when The Supervisors knew or should have known that relying on these officers to investigate allegations of misconduct against their fellow police officers is and has been ineffective at preventing and correcting police misconduct; and (6) failure to institute an anti-nepotism policy. Id. at ¶ 26.

All of The Officers, as well as former Superintendent Toledo, have filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Docket No. 11. Mainly, the defendants argue that Villafaña failed to meet the pleading standard established by the U.S. Supreme Court in Iqbal v. Ashcroft, 556 U.S. 662 (2009) and Bell Atlantic v. Twombly, 550 U.S. 544 (2007). In particular, they claim that plaintiff Rivera-Valentín, who is Villafaña's mother, failed to plead any federal cause of action at all in the complaint. Defendants also posit that Villafaña's claims under the Fourteenth Amendment are preempted, as they are really claims arising from an unreasonable seizure and use of excessive force under the Fourth Amendment. As to his conspiracy claim under Section 1983, Defendants maintain that Villafaña has only set forth conclusory allegations and hence has failed to state a claim of conspiracy pursuant to Section 1983.

Seeking to dismiss the suit against The Supervisors, Defendants

argue that under the case law, The Supervisors cannot be held liable simply under a theory of respondeat superior. Rather, they may only be held liable for their own acts or omissions if these are affirmatively linked to the subordinate's unconstitutional behavior. Defendants advance that Villafaña has only pleaded conclusory allegations that The Supervisors failed to train and supervise their subordinates, thereby failing to surpass the threshold set by Iqbal.

    Before proceeding to discuss these issues, the Court outlines the relevant standard of review below.

## II. STANDARD OF REVIEW

    Motions to dismiss brought under FED.R.CIV.P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994). Firstly, when ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Additionally, courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

    In determining whether dismissal of a complaint is appropriate pursuant to Rule 12(b)(1) or 12(b)(6), the court must keep in mind that "[t]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief.... this short and plain statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." Gargano v. Liberty Intern.

Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted). Nevertheless, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has ... held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement."

Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 129 S.Ct. at 1960). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernández, 640 F.3d at 9 (citing Iqbal, 129 S.Ct. at 1951).

When evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely." Ocasio-Hernández, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernández, 640 F.3d at 13.

### III. DISCUSSION

Section 1983 creates "no independent substantive right, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." Cruz-Erazo v. Montanez, 212 F.3d 617, 621 (1st Cir. 2000). Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (internal quotation marks omitted). Liability under Section 1983 requires that the conduct complained of (1) be "committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges or immunities secured by the Constitution of the United States." See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327 (1986)). "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997). Moreover, there must be a direct causal connection between the defendants and the alleged constitutional violation. See Gutiérrez-

Rodríguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989).

In addition to the foregoing, a plaintiff must also show that each individual defendant was involved personally in the deprivation of constitutional rights because no respondeat superior liability exists under Section 1983. See Colón-Andino v. Toledo-Dávila, 634 F.Supp.2d 220, 232 (D.P.R. 2009) (citing Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984)).

**A. Fourth Amendment - Excessive force**

In the instant case, Plaintiffs bring an excessive force claim under the Fourth Amendment, alleging that Villafaña was beaten and assaulted unlawfully in furtherance of his arrest. Defendants assert that said claim should be dismissed for failure to state a plausible claim upon which relief can be granted. In addition, they claim that plaintiff Rivera-Valentín's claims should be dismissed because she has not brought forth any well pleaded factual allegations that would entitle her to relief or any other allegations demonstrating a constitutional violation. Docket No. 11, at 5-6

The Fourth Amendment to the Constitution of the United States protects citizens against unreasonable searches and seizures from the government. U.S. CONST. amend. IV. "To establish a Fourth Amendment excessive force claim, a plaintiff must show that the defendant employed force that was unreasonable under all the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009). When analyzing the reasonableness factor in an excessive force claim, the assessment should be objective, asking whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them." Napier v. Town of Windham, 187 F.3d 177, 182-83 (1st Cir. 1999)(internal quotation marks and citations omitted). To determine whether the force used to effect a particular arrest is reasonable under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue,

(2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 396 (1989). The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene." Id.

In the complaint, Villafaña specifies how the arrest, beating, and seizure were made. Villafaña asserts that as a result he suffered multiple body trauma and required medical attention. When the facts in this case are examined in the light most favorable to him, it seems that The Officers did not confront such tense, uncertain or dangerous circumstances that would justify the use of excessive force during the arrest. There is nothing in the record that suggests that Villafaña presented an immediate threat to The Officers or others. As Villafaña recites in his complaint, he was merely hiding underneath a truck when the officers seized and proceeded to assault him. Beforehand, he claims he was only in his residence performing household chores and had committed no crime. Thus, the Court concludes that Villafaña has raised sufficient allegations at this stage of the pleadings to demonstrate that The Officers' actions were unreasonable under the circumstances.

Notwithstanding, the Court agrees with Defendants that Rivera-Valentín has failed to plead any cause of action under the Fourth Amendment. Defendants point out that the only instance in which Rivera-Valentín is mentioned in the complaint as having suffered damages is under the state law claims section (Compl. ¶ 35). Plaintiffs in their opposition to the Motion to Dismiss seem to concede the point, but argue that Rivera-Valentín's state law claims survive under the Court's supplemental jurisdiction, "even though no federal cause of action is pled [by her]." Docket No. 15 at 10. Accordingly, the Court sees fit to dismiss Rivera-Valentín's claims under the Fourth Amendment. See also Colón-Andino, 634 F.Supp.2d at 229 (Arrestee's wife, mother, and father lacked Article III standing to bring Section 1983 action against police

officers involved in alleged harassment and arrest of arrestee, absent allegation that they personally suffered injuries due to officers' actions).

As a result of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motion to Dismiss and hereby dismisses plaintiff Rivera-Valentín's Fourth Amendment claim. Remaining before this Court are thus plaintiff Villafaña's Fourth Amendment claims.

**B. Fifth Amendment**

Plaintiffs' complaint asserts liability pursuant to the Fifth Amendment to the United States Constitution. Defendants contend that such liability is inapposite because the Fifth Amendment Due Process Clause only applies to actions taken by the federal government and not those of state or local governments. Docket No. 11 at 6-7.

The due process clause of the Fifth Amendment states that: "No person shall ... be deprived of life, liberty or property, without due process of law..." U.S. CONST. amend. V. The Fifth Amendment only applies to actions of the federal government not those of private individuals or state governments. Public Utilities Commission v. Pollak, 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); see also Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 9 (1st Cir. 2007).

In the case at bar, only state officials are named as defendants. Thus, there is no federal government action and the Fifth Amendment is inapplicable to Defendants. Accordingly, the Court finds that Plaintiffs' Fifth Amendment claim must be dismissed.

As a result of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss as to the Fifth Amendment claim.

**C. Fourteenth Amendment**

Plaintiffs further assert that Defendants' actions violated their rights under the Fourteenth Amendment. Defendants' respond in their Motion to Dismiss that Villafaña's claim is really a Fourth Amendment

claim as he alleges that he was the subject of a seizure, thus preempting his Fourteenth Amendment claim. Defendants' further contend that plaintiff Rivera-Valentín's Fourteenth Amendment claim should also be dismissed for failure to state a claim upon which relief can be granted.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment embodies a substantive component that provides protection against "government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986).

The Supreme Court has held that "all claims that law enforcement officers have used excessive force, deadly or not, in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395; see also Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008). In other words, the protection afforded by the Fourth Amendment may preempt the substantive due process protection guaranteed by the Fourteenth Amendment. If the use of force constituted a seizure within the context of the Fourth Amendment, the claim must be analyzed only under that Amendment's reasonableness standard. Graham, 490 U.S. at 395. In contrast, if the plaintiff was not seized, then the Fourth Amendment would not apply and the use-of-force claim would proceed under the substantive due process component of the Fourteenth Amendment.

A "seizure" which entitles a plaintiff to the Fourth Amendment's protection, occurs only when government actors have, "by means of physical force or a show of authority, ... in some way restrained the liberty of a citizen ..." U.S. v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994)(citing Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968)). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental

conduct, that Amendment, not the more generalized 'substantive due process,' must be the guide for analyzing these claims." Graham, 490 U.S. at 395. Furthermore, the First Circuit has held that "in an excessive force case, the threshold constitutional question is analyzed under the Fourth Amendment's objective reasonableness standard." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 7 (1st Cir. 2005).

The Court concludes that Villafaña's claim is a Fourth Amendment claim as he was the subject of a seizure. It is evident from the face of the complaint that defendants used physical force against Villafaña while proceeding to arrest him and thus restrained his freedom. Thus, Plaintiffs' substantive due process claim cannot prevail.

Accordingly, the Court **GRANTS** Defendants' petition that Plaintiffs' Fourteenth Amendment claim be dismissed.

**D. Conspiracy claim pursuant to 42 U.S.C. § 1983**

Villafaña also alleges that Defendants entered into a conspiracy to engage in the course of conduct that violated his civil rights. Defendants contend that Villafaña's allegations in this regard are conclusory and hence fail to state a claim of conspiracy pursuant to Section 1983.

A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another,' and 'an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal citations omitted). "To establish a conspiracy claim under [Section] 1983, plaintiff must 'prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.'" Rivera-Carrero v. Rey-Hernández, Civil No. 04-1925, 2006 WL 572349, at *2 (D.P.R. 2009)(citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)). In order to state a conspiracy claim, the plaintiff must allege "specific facts showing an agreement and concerted action

amongst the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive the plaintiff of a federally protected right." Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(citing Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)("Conclusory allegations of conspiracy are insufficient to state a valid section 1983 claim.").

At the outset, the Court notes that many of the allegations advanced by Plaintiffs in this respect are conclusory. Statements such as The Officers "conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated [Villafaña's] civil rights in further of the conspiracy" and that they "shared the general conspiratorial objective which was to assault and batter [Villafaña]" can both be classified as generic and conclusory. However, Villafaña also maintains that the Defendants adhere to a code of silence, "whereby if asked about the incidents the defendants will lie about what occurred" and that the defendants refused to intercede in the beatings or otherwise report the incident to their supervisors. The code of silence alleged by Villafaña comes closer to the mark of showing a conspiracy. Oquendo-Rivera v. Toledo, 736 F.Supp.2d 434, 442 (D.P.R. 2010)(Dismissing similar conspiracy claims, but at the summary judgment stage).

The question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible. Ocasio-Hernández, 640 F.3d at 14. Although Villafaña's allegations regarding the code of silence and the failure to intercede and report are thin, the Court concludes that when they are read in tandem with the rest of the allegations in the complaint, they make Villafaña's entitlement to relief plausible.

Accordingly, the Court chooses not to dismiss Villafaña's conspiracy claim at this early stage of the proceedings. Thus Defendants' Motion to Dismiss the conspiracy claim is **DENIED.**

**E. Supervisory Liability**

Plaintiffs allege that within the PRPD there are policies or customs, practices and usages which have led to the constitutional violations claimed by them. Said practices and customs include assaulting and battering citizens without regard for the need to use force, a code of silence, and a failure by the PRPD Internal Affairs Division to welcome complaints by citizens against officers. Hence, they have brought supervisory liability claims against The Supervisors, professing that they have ratified the purported shortcomings of the Internal Affairs Division, and that they have consequently "abrogated the power to so train, supervise, discipline and control the officers." Compl. ¶¶ 25-30.

In an action brought under Section 1983, "supervisors are not automatically liable for the misconduct of those under their command." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). Nevertheless, a superior officer may be held liable under Section 1983 for their own acts or omissions. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). Consequently for a plaintiff to establish a cause of action under the supervisory liability doctrine, it must establish that: "(1) the behavior of the subordinates results in a constitutional violation and (2) the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence of the supervisor amounting to deliberate indifference.'" Whitfield, 431 F.3d at 14 (citing Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995)).

A careful review of Plaintiffs' complaint reveals that they have not set forth sufficient specific facts in order to overcome the hurdle of Defendants' Motion to Dismiss. In the complaint, Plaintiffs' allegations do not demonstrate that The Supervisors failed to evaluate, train and supervise their subordinates with the required specificity, much less that they intentionally disregarded known facts or that they

were deliberately indifferent to the risk of constitutional violations. In fact, in this regard Plaintiffs' statements are conclusory as they merely recite the prevailing standards governing supervisory liability under Section 1983. See Sánchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)(disregarding as conclusory, under Iqbal's first prong, a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights").

Accordingly, Plaintiffs' supervisory liability claim is hereby **DISMISSED**.

### IV. CONCLUSION

For the reasons stated above, Defendants' request for dismissal (Docket No. 11) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff Villafaña's claims under the Fifth and Fourteenth Amendments, as well as his claim of supervisory liability, are hereby **DISMISSED WITH PREJUDICE.** Defendants' request for dismissal as to Plaintiff Rivera-Valentín is hereby **GRANTED** as to all of her federal claims. The Court will nevertheless exercise its discretion and entertain Rivera-Valentín's state law claim under article 1802 of the Puerto Rico Civil Code. Remaining before the Court are thus Villafaña's claims under the Fourth Amendment, including his conspiracy claim, as well as his claims under the Constitution of Puerto Rico, and his and Rivera-Valentín's article 1802 claim.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, November 21, 2011.

s/ JUAN M. PEREZ-GIMENEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**